**In the Matter of EXTEN ASSOCIATES, INC., Bankrupt.**

**Gerald S. KLEIN, as Trustee of the bankrupt estate of Exten Associates, Inc., Plaintiff,**

v.

**GAC LIMITED PARTNERSHIP, and Topside Corporation, and Topside Marina Limited Partnership, and Maryland National Bank, Defendants.**

Bankruptcy No. 75–00351–K.

United States Bankruptcy Court, D. Maryland.

Aug. 28, 1981.

Charles M. Kerr and John Henry Lewin, Venable, Baetjer & Howard, Baltimore, Md., for plaintiff Gerald S. Klein, trustee.

Thomas C. Swiss and David Freishtat, Freishtat, Schwartz & Sandler, Baltimore, Md., for defendant GAC Limited Partnership.

Charles A. Docter, Docter, Docter & Salus, Kensington, Md., and James R. Miller, Miller & Steinberg, Rockville, Md., for defendants Topside Corp. and Topside Marina Limited Partnership.

James R. Eyler and David E. Bushong, Miles & Stockbridge, Baltimore, Md., for defendant Maryland National Bank.

## MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS

HARVEY M. LEBOWITZ, Bankruptcy Judge.

This controversy arises out of the Trustee's Complaint filed in this Court on Sep-tember 3, 1980. That Complaint seeks both an Order of this Court directing that certain named Defendants turn over property alleged by the Trustee to belong to Exten Associates, Inc. ("Exten"), the Bankrupt herein, and an Order nullifying an assignment of insurance proceeds made to the Defendant Maryland National Bank. Defendants GAC Limited Partnership ("GAC"), Topside Corporation ("Topside Corp."), and Topside Marina Limited Partnership ("Topside Partnership") have each filed motions to dismiss together with memoranda in support of their position that the instant case is outside this Court's summary jurisdiction.[1] The Trustee, not unexpectedly, has filed a memorandum in opposition to the several motions. Each of the moving Defendants has filed a reply memorandum as well. On May 14, 1981, a hearing was held in open court at which time the Court heard the argument of counsel on the motions challenging this Court's power to hear this Complaint under its summary jurisdiction. Although the Defendant Maryland National Bank has neither filed a motion nor participated in the hearing it has raised in its Answer to the Trustee's Complaint under the style "Fourth Defense," the assertion that this "Court lacks subject matter jurisdiction to entertain this action."

### I.

These bankruptcy proceedings were instituted on July 1, 1974, when Exten filed an original petition for an arrangement under Chapter XI of the Bankruptcy Act of 1898 (the "Act"), 11 U.S.C. §§ 701–799 (1976). On July 11, 1975, by Order of the Honorable Joseph O. Kaiser, this Court confirmed the plan of arrangement proposed by Exten. Both the plan and the Order of this Court contained the provisions for retention of jurisdiction pursuant to § 357(7) and § 368

---

1. This case arose under and is governed by the Bankruptcy Act of 1898 as it stood prior to the adoption of the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2683 (1978).

Section 403(a) of the Reform Act provides that such cases "shall continue to be governed by the law applicable to such case, matter, or

of the Act that are set out in the margin.[2] Thereafter, a motion pursuant to § 377 of the Act, 11 U.S.C. § 777 (1976), and Rule 11–42(b)(5) was filed by National Mortgage Corp. and Sundowner Joint Venture on August 28, 1978, seeking to have this Court adjudicate Exten a bankrupt and direct that the case continue as a straight bankruptcy. Following a hearing on November 7, 1978, Judge Kaiser entered an Order on December 29, 1978, adjudicating Exten a bankrupt and converting the case to a straight bankruptcy.[3] The dispute between the parties here arises from acts done after the order of confirmation, but prior to adjudication and conversion. The Trustee alleges that these acts were part of a scheme to defraud Exten's creditors.

The facts alleged in the Trustee's Complaint, which the Defendants appear to concede solely for the purposes of these motions to dismiss, set up the following course of events. At the time Exten filed its petition under Chapter XI of the Act it owned the Topside Restaurant and Marina located in Ocean View, Delaware. The arrangement confirmed by this Court provided that creditors' payments were to be secured by a mortgage on the Topside Restaurant and Marina. Following confirmation no creditors were paid as provided for in the arrangement, and the mortgage was never prepared or recorded in accordance with the terms of the arrangement. The Trustee alleges that Exten's failure to provide the mortgage enabled it to engage in a series of post-confirmation transactions in furtherance of a scheme to defraud its creditors.

The Trustee has alleged that following confirmation Exten transferred its interest in the Topside Restaurant to the Defendant GAC but continued to operate the business under the terms of a lease. Subsequently, when it was evident that this Court would hear the creditor's motion to adjudicate, Exten's lease was terminated and the restaurant business was leased to the Defendant Topside Corp. At about the same time Exten induced its mortgagee of the Topside Marina to undertake a sham foreclosure sale. The purchaser at the foreclosure sale (held after this Court's Order of Adjudication was entered) was the Defendant Topside Partnership. The general partner in Topside Partnership is the Defendant Topside Corp. The Trustee has further alleged that these entities are no more than the alter ego of Exten or its principals, and that the principals of each entity had full knowledge of the proceedings before this Court.

■ In February of 1980 the premises of the Topside Restaurant were destroyed by

---

proceeding as if the [Reform] Act had not been enacted."

2. The Order of Confirmation contained the following provision relating to the retention of jurisdiction:

This Court shall retain jurisdiction over pending matters and pursuant to Section 369 of the Act.

The Modified Plan of Arrangement as approved by the Court contained a more extensive provision for retention of jurisdiction:

ARTICLE V
RETENTION OF JURISDICTION

The Court shall retain jurisdiction until consummation of the Plan of Arrangement, and thereafter shall retain jurisdiction for

(a) the purposes specified in Section 369 of the Bankruptcy Act;

(b) the granting of allowances in the proceedings;

(c) the disposition of all matters, controversies and disputes arising from claims or preferences, validity of claims of alleged secured creditors, ratification of sales made by the debtor to implement its Plan of Reorganization.

3. The Order of Adjudication has been appealed to the United States District Court for the District of Maryland and that proceeding styled *Sundowner Joint Venture v. Exten Associates, Inc.*, Civ. Action No. R78–2096, is still pending in that Court.

The Order of Confirmation was entered in the case at bar as well as in the individual Chapter XI cases of Gerald M. Exten (Bankruptcy No. 74–00353–K) and Mary Ellen Exten (Bankruptcy No. 74–00358–K). The Motion to Adjudicate was originally filed in all three cases. Following a hearing on July 8, 1981, this Court entered Orders on July 15, 1981, adjudicating both Gerald M. Exten and Mary Ellen Exten as bankrupt and converting their cases to straight bankruptcy. An appeal to the United States District Court for the District of Maryland was noted in each of the individual cases on July 24, 1981.

fire. Under the policy of insurance issued to Topside Corp., GAC was named as mortgagee, and both entities made a claim with the insurer. The proceeds of the policy were then assigned by Topside and GAC to the Defendant Maryland National Bank to be applied to a 1976 chattel loan to GAC. These proceeds were the subject of an injunction issued by this Court after a hearing on March 5, 1980 that restrains action by Topside Corp. and GAC to dispose of the proceeds.[4] When passing upon the question of jurisdiction the Court must take these facts as set forth in the Trustee's complaint as being true. *In re Pathe News, Inc.*, 276 F.Supp. 670, 670–71 (S.D.N.Y.1967).

## II.

Under the Bankruptcy Act of 1898, a bankruptcy court was a court of limited jurisdiction. The Act provided that a bankruptcy court could exercise only summary jurisdiction. Absent the consent of the parties, it is a well settled matter of law that summary jurisdiction cannot be invoked unless the bankruptcy court has actual or constructive possession of property that is the subject matter of the controversy. *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966); *Lindsey-Robinson & Co. v. Grady*, 282 F.2d 607, 610 (4th Cir. 1960); 2 Collier on Bankruptcy ¶ 23.-04[2] (14th ed. 1976). In the absence of this prerequisite, the litigants must proceed with an action in a court having plenary jurisdiction. *See Suhl v. Bumb*, 348 F.2d 869, 870 (9th Cir. 1965). When an objection to the exercise of summary jurisdiction is sustained, Bankruptcy Rule 915 provides that "the bankruptcy judge shall dismiss such proceeding, matter, or part thereof, or transfer it to the civil docket of the District Court, as may be appropriate."

The property that is the subject of the instant complaint was owned by, or is the identifiable proceeds of property owned by Exten at the time of the filing of the petition under Chapter XI. Accordingly, it came into the constructive possession of, and therefore under the summary jurisdiction of, this Court at the instant Exten initiated its chapter proceeding. 2 Collier on Bankruptcy ¶ 23.05[2] (14th ed. 1976). The issue at the heart of the jurisdictional question presented here, however, is whether the Court retained actual or constructive possession sufficient to invoke its summary jurisdiction over the same property when it has been transferred after the confirmation of a plan of arrangement providing for the retention of jurisdiction.

The threshold inquiry concerning the exercise of summary jurisdiction after confirmation is a determination of whether the bankruptcy court retained jurisdiction following confirmation pursuant to § 368 of the Act, 11 U.S.C. § 768 (1976). In this case there can be no doubt that this Court retained jurisdiction after confirmation of the plan of arrangement. Article V of the arrangement set out in note 2 *supra* provides without qualification that the "Court *shall retain jurisdiction until consummation* of the plan of arrangement." Because § 368 makes retention of jurisdiction mandatory if provided for in the arrangement, the order of confirmation whatever its terms must necessarily incorporate the terms of the plan of arrangement. *See, Seedman v. Friedman*, 132 F.2d 290, 294 (2d Cir. 1942). The Defendants do not contest that consummation did not occur. Thus, this Court retained jurisdiction pursuant to § 368. The matter hotly contested here is whether such retention had the effect of retaining the property of the debtor-in-possession within the possession of the Court, and thereby continuing this Court's summary jurisdiction over it.

The Defendants base their motions upon a similar foundation. That foundation is § 381(1) of the Bankruptcy Act of 1898, 11 U.S.C. § 781(1) (1976). Section 381(1) provides that,

Where, after the confirmation of an arrangement, the court shall enter an order

4. The issuance of the injunction has been appealed to the United States District Court for the District of Maryland, where it is pending under the style *Klein v. Topside Corp.*, Civ. Action No. JD–80–943.

directing that bankruptcy be proceeded with—

(1) *the trustee shall,* upon his appointment and qualification, *be vested with the title to all of the property of the debtor as of the date of the entry of the order* directing that bankruptcy be proceeded with.

*Id.* (emphasis added). The Defendants contend, because title does not vest in the Trustee under § 381(1) until the Order of Adjudication, that following such an order a bankruptcy court does not have actual or constructive possession of the property of a Chapter XI debtor-in-possession that is transferred prior to adjudication but subsequent to a confirmation under which the court has retained jurisdiction pursuant to § 368 of the Act, 11 U.S.C. § 768 (1976). Inasmuch as a bankruptcy court cannot exercise its summary jurisdiction absent such possession, the Defendants' conclude that this Court is without jurisdiction to hear the instant complaint.

Under this construction of § 381(1), the Defendants argue that after an order confirming a Chapter XI plan of arrangement a bankruptcy court that has retained jurisdiction enters a period that may be characterized as one of "at most, watchful waiting." *Seedman v. Friedman,* 132 F.2d 290, 295 (2nd Cir. 1942). This argument is predicated upon § 70(i) of the Act, 11 U.S.C. § 110 (1976). Under § 70(i), the confirmation of an arrangement revests in the debtor the title to the property dealt with by the arrangement. *Cf.* Bankruptcy Rule 11-38(f). The Defendants contend therefore that during this period preceding adjudication there is a suspension of the bankruptcy court's summary jurisdiction over the property of the debtor in possession, which continues until the Trustee's title vests pursuant to § 381(1). Once the Trustee's title vests following adjudication, the Defendants contend that the bankruptcy court's summary jurisdiction then extends only to the property remaining in the possession of

the former debtor in possession at the time of adjudication. The Court disagrees. This construction of the effect of § 381(1) is wholly without merit because it interprets that section without considering the overall scheme of Chapter XI proceedings and ignores other provisions of the Act and the Bankruptcy Rules concerning confirmation and adjudication.

■ The basic framework for the court's post-adjudication action is established by Bankruptcy Rule 122(1). That rule provides that following an adjudication of bankruptcy in a Chapter XI proceeding, the straight bankruptcy "case shall be deemed to have been commenced as of the date of the filing of the first petition initiating a case under the Act and shall be conducted as far as possible as if no petition commencing a chapter case had been filed."[5] Thus, the bankruptcy court is to treat the case as having been one in straight bankruptcy from the outset.

■ The provisions of § 381(1) are not a limitation on this general principle. Rather, § 381(1) is intended to give the bankruptcy estate the additional benefit of the property acquired during the chapter proceedings by vesting title in the trustee at adjudication, as opposed to relating it back to the filing of the first petition under the Act. Consequently, the bankruptcy court may exercise summary jurisdiction over more property than would otherwise be the case. For example, during a typical chapter proceeding the continued operation of the business by the debtor in possession in the ordinary course will necessitate the use of prepetition assets, such as in the sale of inventory for cash to be used to purchase raw materials for continued production. Thus, § 381(1) brings into the bankruptcy estate and under the bankruptcy court's jurisdiction upon adjudication not only the prepetition assets not consumed by the operation of the business, but also all the assets acquired during the chapter proceeding. Such a provision is appropriate be-

**5.** Rule 122 superceded the similar provisions of § 378(a)(2) of the Act, 11 U.S.C. § 778(a)(2) (1976). *See* 28 U.S.C. § 2075 (1976).

cause the debtor-in-possession has been permitted in the ordinary course of business to dissipate assets that creditors could have otherwise looked to for satisfaction of their claims in a straight bankruptcy proceeding. The Trustee is therefore, on their behalf, vested with title to both types of property, namely all remaining pre-petition property together with any additional property obtained by the debtor in possession during the Chapter proceeding and retained by it at the time of adjudication.

■ The critical prerequisite to the exercise of the court's summary jurisdiction, however, is not the vesting of the Trustee's title, but actual or constructive possession of the property by the bankruptcy court. *Lindsey-Robinson & Co. v. Grady*, 282 F.2d 607, 610 (4th Cir. 1960). In at least two respects, this Court has constructive possession of the property that is the subject of the instant complaint. First, the Fourth Circuit made clear in *Lindsey-Robinson & Co.* that a bankruptcy court has constructive possession of property actually held by another when the third party's claim "is colorable only." 282 F.2d at 611. As the Ninth Circuit observed in *Suhl v. Bumb*, 348 F.2d 869 (9th Cir. 1975), the limited instances in which courts have exercised summary jurisdiction with respect to a colorable claim have most frequently involved determinations of alter ego. Such instances "rather invariably concern situations in which an insolvent individual has conveyed his property to a newly-formed corporation with the express view to withdrawing that

property from the reach of creditors." *Id.* at 873.[6] This is precisely the substance of the allegations made by the Trustee. Thus, this Court may exercise summary jurisdiction over the property to which Defendants assert title should the Trustee prove that GAC, Topside Corp., and Topside Partnership are no more than the alter ego of Exten.

■ Second, during the period following confirmation, the Debtor does not have the right to deal with his property with impunity if the bankruptcy court retains jurisdiction. Any transaction out of the ordinary course of business is subject to court approval. This general rule is reflected in § 344 of the Act, which makes court approval a prerequisite to post-confirmation issuance of certificates of indebtedness. Furthermore, Bankruptcy Rule 11–44(b) provides that the stay imposed by Rule 11–44(a) continues "until the case is closed, dismissed, or converted to bankruptcy or the property subject to the lien is, with the approval of the Court, abandoned or transferred." Inasmuch as the debtor retains the benefit of the stay after confirmation,[7] it would be harsh indeed to deny that the stayed creditors are not to be afforded protection against disposition of the Debtor's assets out of the ordinary course of business and in contravention of the arrangement. The creditors' protection is manifest in the Rule 11–44(b) provision conditioning transfer of property subject to liens upon prior

---

**6.** In reaching its decision, the *Suhl* court relied upon the Supreme Court's decision in *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941). In *Sampsell* the Court observed that:

> Mere legal paraphernalia will not suffice to transform into a substantial adverse claimant a corporation whose affairs are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than his corporate pocket. Whatever the full reach of that rule may be, it is clear that a family corporation's adverse claim *is merely colorable where, as in this case, the corporation is formed in order to continue the bankrupt's businesses, where the bankrupt remains in control, and where the effect of the*

> *transfer is to hinder, delay or defraud his creditors.*
>
> *Id.* at 218, 61 S.Ct. at 907 (emphasis added).

**7.** Section 372 of the Act, 11 U.S.C. § 772 (1976) provides that the closing of the estate and final decree of the Bankruptcy Court is to occur *upon consummation* of the arrangement rather than upon confirmation. In the instant proceedings, the arrangement was never consummated, and thus the stay imposed by Rule 11–44(a) remained in effect until this Court's order converted the case to one in straight bankruptcy. Upon conversion, the stay does not then lapse because Bankruptcy Rules 401 and 601 automatically institute a stay, albeit one of somewhat lesser scope. *See* 14 Collier on Bankruptcy ¶ 11–44.03 (14th ed. 1976).

court approval.[8] If such a transfer is made without approval, and in violation of the stay, the transfer is void. 8 Collier on Bankruptcy ¶ 3.20[3], at 235 n.17 (14th ed. 1978). *See also Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940). Thus, property so transferred would never pass out of the constructive possession or jurisdiction of the bankruptcy court. Moreover, the Sixth Circuit recognized in *In re Ohio Builders & Milling, Inc.*, 128 F.2d 165 (6th Cir. 1942), that when jurisdiction has been retained "no encumberance [can] be put upon the assets of the Debtor *without the Court's approval.*" *Id.* at 166 (emphasis added). When the transaction is not in the ordinary course of business, and not authorized, the Court retains summary jurisdiction sufficient to insure recovery of the property for the estate. The *Ohio Builder's* Court implicitly recognized such jurisdiction by invalidating an unauthorized mortgage. The concept of "watchful waiting" referred to by the Second Circuit in *Seedman v. Friedman*, 132 F.2d 290, 294 (2d Cir. 1942), is wholly inapposite under the circumstances of the instant case. The Second Circuit was merely observing that the bankruptcy court's consent "was not a prerequisite to the validity of [a] contract entered into *pursuant to the express terms of the arrangement.*" 132 F.2d at 295 (emphasis added). Thus, the *Seedman* court was merely affirming the rule that transactions entered into either in the ordinary course of business, or as provided for in the plan need not be approved by the Court unless the arrangement provides to the contrary.

The power of the bankruptcy court to supervise transactions out of the ordinary course must necessarily flow from constructive possession by the Court by virtue of the § 368 retention of jurisdiction. The revesting of title in the Debtor upon confirmation under § 70(i) of the Act, 11 U.S.C. § 110(i) (1976), and the subsequent vesting of title in the Trustee upon adjudication by virtue

of § 381(1) of the Act, 11 U.S.C. § 781(1) (1976), are wholly irrelevant to a determination of whether the bankruptcy court has constructive possession of the Debtor's property after confirmation of an arrangement providing for retention of jurisdiction. So long as the Court has retained jurisdiction, the former debtor-in-possession must remain a Court fiduciary to some degree. To the extent that *In re Miske*, 159 F.Supp. 677, 680 (E.D.Wis.1958), relied upon by the Defendants appears to hold to the contrary, the Court expressly declines to adopt the reasoning of that court, which is not supported by citation to any authority. The parties have not referred the Court to any subsequent opinion that relies upon *Miske*, and the Court's own search has revealed but a single decision in which the *Miske* opinion has been cited. That instance, coincidentally, is the opinion of then District Judge Winter in *In re Lexington Appliance Co.*, 202 F.Supp. 869, 870 (D.Md.1962), in which *Miske* is referred to solely with respect to the law of consignments.

■ Furthermore, the limitation of the Debtor's rights to deal with its property after confirmation is emphasized in this case by the plan itself. Exten's plan of arrangement expressly provides in Article V(c) that the Court retained jurisdiction over the "ratification of sales made by the Debtor to implement its Plan of Reorganization." The Trustee alleges that real estate has been transferred by Exten despite the express provision of the plan of arrangement that the property was to be subject to a mortgage for the benefit of creditors—a mortgage which was never prepared or recorded. If the Court has retained constructive possession of Exten's property sufficient to implement the Article V provisions of the Arrangement, it is ludicrous indeed for the Defendants to protest that such possession does not also attach for purposes of negating a transfer that was an attempt to subvert the arrangement by di-

---

**8.** The continuance of the Rule 11–44(a) stay is yet another indication that a bankruptcy court is intended to exercise significant jurisdiction after confirmation. So long as the stay remains in effect, the court must necessarily have jurisdiction to hear a complaint filed under Rule 11–44(d) to terminate, annul, modify or condition the stay.

vesting Exten of property constituting the very essence of the plan of arrangement. Once property is within the constructive possession of the bankruptcy court, that possession is not vitiated by an unlawful transfer to a third party not theretofore subject to the Court's summary jurisdiction.

Based upon the foregoing analysis, the Court is convinced that it has sufficient actual or constructive possession of both the prepetition and postadjudication property of the Debtor in order to exercise its summary jurisdiction to determine the merits of the Trustee's Complaint. The Court retained jurisdiction following confirmation of the arrangement. By virtue of the retention of jurisdiction, the Court retained actual or constructive possession of the assets in the hands of Exten at confirmation. An unlawful transfer of those assets, if proved, does not oust this Court from actual or constructive possession. Thus, summary jurisdiction exists sufficient for this Court to decide any dispute dealing with property of Exten that was so transferred. Whether the Trustee can prove that such a transfer occurred, awaits a hearing on the merits in this Court.

### III.

■ The Defendants Topside Corp. and Topside Partnership have also asserted that this Court has previously ruled and made the law of the case that the Trustee must proceed by way of a plenary, rather than summary suit. The basis for this contention is said to be found in the references by this Court to a "plenary suit" during the hearing on the Trustee's Application for a Preliminary Injunction with respect to the insurance proceeds. Such a contention is without merit. Because the Court was not called upon to rule on questions of jurisdiction at the hearing, any such ruling could have been no more than dicta. No such ruling was made in any event, because the record makes clear that reference to a "plenary suit" was being made to distinguish the Trustee's action pending in the Circuit Court of Baltimore City from the proceeding then pending before this Court for injunctive relief.

■ Two further arguments have been advanced that challenge this Court's jurisdiction to hear this complaint. First, Defendant Topside Partnership maintains that this Court cannot exercise jurisdiction over the Topside Marina property because a mortgage foreclosure action was instituted in the Superior Court of Sussex County, Delaware, prior to the conversion of this case to one in straight bankruptcy. The basis for this argument is that the foreclosure action was not stayed by Bankruptcy Rule 601, and thus the Delaware Court has exclusive jurisdiction over the real property. This contention is erroneous in view of the fact that Rule 11–44 stays the enforcement of any lien against the Debtor's property until the bankruptcy case is closed, dismissed or converted. *See* 14 Collier on Bankruptcy ¶ 11–44.03 (14th ed. 1976). Moreover, the Rule 11–44 stay remains applicable "regardless of who has custody of the Debtor's property." 8 Collier on Bankruptcy ¶ 3.22[1] at 261 (14th ed. 1978). When, as in this case, the Bankruptcy Court first has the property *in custodia legis*, a state court cannot acquire jurisdiction over that property absent a prior order of the Bankruptcy Court annulling or modifying the Rule 11–44 stay. *Id.* at 259. Thus, Rule 11–44 stayed the Delaware foreclosure action, and the property has been at all times in the constructive or actual possession of the Court and subject to its summary jurisdiction.

■ Second, Defendant Topside Corp. contends that this Court lacks jurisdiction over insurance proceeds in the hands of a third party that has an insurable interest. Whatever the merit of this general rule, it does not apply here because the Trustee has alleged that Topside Corp. is no more than the alter ego of Exten. Were the Trustee to prove this allegation, the Court must necessarily have jurisdiction over assets in the hands of Topside Corp. because such a ruling would be tantamount to a finding that Topside Corp. and Exten are both arms of the same bankrupt entity.

For the reasons set forth above, it is this 28th day of August, 1981, by the United States Bankruptcy Court for the District of Maryland,

ORDERED that the Motion to Dismiss filed by GAC Limited Partnership on October 30, 1980, should be, and the same is hereby DENIED; and it is

FURTHER ORDERED that the Motion to Dismiss filed by Topside Corporation on October 31, 1980, should be, and the same is hereby DENIED; and it is

FURTHER ORDERED that the Motion to Dismiss filed by Topside Marina Limited Partnership on October 31, 1980 should be, and the same is hereby DENIED; and it is

FURTHER ORDERED that a copy of this Order shall be mailed forthwith by the Clerk of this Court to all counsel of record.